**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

GERARDO ALVARADO,

      Plaintiff,                                       Case No. 10-22072-CIV-Huck/O'Sullivan

vs.

UNIVERSIDAD CARLOS ALBIZU
(CARLOS ALBIZU UNIVERSITY), INC.,
a Puerto Rico corporation,

      Defendant.
_____/

**DEFENDANT'S MOTION TO DISMISS**
**COUNT TWO OF PLAINTIFF'S COMPLAINT**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Universidad Carlos Albizu (Carlos Albizu University), Inc. ("CAU"), by and through undersigned counsel, hereby submits this Motion to Dismiss the second of the four Counts in the Complaint filed against CAU by Plaintiff, Gerardo Alvarado ("Plaintiff"). Assuming for the purpose of argument only[1] that all of the allegations in Plaintiff's Complaint are true, Count 2, for alleged violation of 18 U.S.C. § 1589, should nevertheless be dismissed for failure to state a claim against CAU upon which relief can be granted.

**ALLEGATIONS OF PLAINTIFF'S COMPLAINT**

1. Plaintiff's Complaint attempts to allege four (4) causes of action against CAU: (a) breach of a 2006 employment contract; (b) the 18 U.S.C. § 1589 violation that is the subject

---

[1] Without waiving any rights and/or defenses, CAU files this Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which assumes the allegations in Plaintiff's Complaint to be true for the purpose of argument, but allows dismissal due to specific grounds. CAU does not concede that the allegations in Plaintiff's Complaint are correct for any other purpose than to enable review of this Motion to Dismiss.

of this Motion to Dismiss; (c) breach of the covenant of good faith and fair dealing, in connection with a 2009 employment contract; and (d) breach of that 2009 employment contract.

2. According to the Complaint, the second count (violation of 18 U.S.C. § 1589) is based on CAU allegedly having received free labor from Plaintiff in return for CAU sponsoring Plaintiff for a permanent labor certification. Specifically, Plaintiff claims that he was working in the United States on an H1-B visa, that he advised CAU that it would have to seek a permanent labor certification for Plaintiff in order to continue his employment beyond December 2009, and that CAU agreed to seek the permanent labor certification on his behalf. Plaintiff's Complaint, ¶¶ 9 and 12.

3. Plaintiff's Complaint alleges that, during the relevant period, he was paid an annual salary of $95,000. Plaintiff's Complaint, ¶ 11, 18, Exhibit 4.

4. Plaintiff's Complaint alleges that, in July 2008, CAU required that Plaintiff assume certain additional job duties, in addition to duties he was performing at the time, and that when he demanded a raise above the annual salary of $95,000 because of the assignment of the additional duties, his demand was denied and he was advised that CAU would not pay "because it was already paying the attorney's fees and costs of the labor certification" and if he pursued the matter of compensation for the additional duties, CAU would cease sponsoring his labor certification or not renew his contract. Plaintiff's Complaint, ¶¶ 13, 19, 21, 22, 25, 26, and 27.

5. Plaintiff's Count 2, therefore, is essentially a claim that CAU "forced" Plaintiff into performing additional duties, in return for his annual salary of $95,000, under "threat" of not renewing his contract when it expired or not continuing to sponsor his application for permanent labor certification. Even accepting these allegations as true, the allegations do not establish a violation of 18 U.S.C. 1589 and 18 U.S.C. 1595, and so Count 2 must be dismissed.

**MEMORANDUM OF LAW**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. Courts should construe the complaint in the light most favorable to the plaintiff and accept as true all facts which the plaintiff alleges therein. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986). The court may only grant a Rule 12(b)(6) motion to dismiss where it is demonstrated beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Despite the low threshold for a complaint to survive a motion to dismiss for failure to state a claim, a court may nonetheless dismiss a complaint when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action. *See Berry v. Budget Rent A Car Systems, Inc.*, 497 F.Supp.2d 1361 (S.D. Fla. 2007); *Marshall County Bd. Of Educ. V. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

  **A.**  **18 U.S.C. 1589 and 18 U.S.C. 1595 are Inapplicable in this Case**

18 U.S.C. § 1589 criminalizes forced labor, and states, in relevant part:

(a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—

  (1)  by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
  (2)  by means of serious harm or threats of serious harm to that person or another person;
  (3)  by means of the abuse or threatened abuse of law or legal process; or
  (4)  by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint, shall be punished as provided under subsection (d).

3

18 U.S.C. § 1595 provides a private right of action for violations of 18 U.S.C. § 1589.  It states, in relevant part:

> An individual who is a victim of a violation of this chapter [*18 USCS §§ 1581 et seq.*] may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1589 was enacted as part of the Trafficking Victims Protection Act of 2000, a subset of the Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, 114 Stat. 1464 (2000).  *See United States v. Kaufman,* 546 F.3d 1242 (10th Cir. 2008);  *United States v. Bradley,* 390 F.3d 145, 150 (1st Cir. 2004) (discussing § 1589). The stated purpose of the Trafficking Victims Protection Act is to "combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." 22 U.S.C. § 7101(a).

The legislative history reveals that, in enacting 18 U.S.C. § 1589, Congress sought to "provide federal prosecutors with the tools to combat *severe forms of worker exploitation* that do not rise to the level of involuntary servitude. . ." See H.R. Conf. Rep. No. 106-939, at 101, as reprinted in 2000 U.S.C.C.A.N. 1380, 1393 and at 2000 WL 1479163 (emphasis added).  In glossing the new statute, the conference report said "serious harm" was intended to encompass not only physical violence, but also more subtle psychological methods of coercion--"such as where traffickers threaten harm to third persons, restrain their victims without physical violence or injury, or *threaten dire consequences* by means other than overt violence." H.R. Conf. Rep. No. 106-939, at 101 (emphasis added).

The Conference Report provided examples of the actions that Congress sought to criminalize:

4

> For example, it is intended that prosecutors will be able to bring more cases in which individuals have been trafficked into domestic service, an increasingly common occurrence, not only where such victims are kept in service through overt beatings, but also where the traffickers use more subtle means designed to cause their victims to believe that serious harm will result to themselves or others if they leave, as when a nanny is led to believe that children in her care will be harmed if she leaves the home. In other cases, a scheme, plan, or pattern intended to cause a belief of serious harm may refer to intentionally causing the victim to believe that her family will face harms such as banishment, starvation, or bankruptcy in their home country. Section 1589 will in certain instances permit prosecutions where children are brought to the United States and face extreme nonviolent and psychological coercion (e.g. isolation, denial of sleep, and other punishments). A claim by an adult of a false legal relationship with a child in order to put the child in a condition of servitude may constitute a scheme, plan or pattern that violates the statute, if there is a showing that such a scheme was intended to create the belief that the victim or some other person would suffer serious harm.

H.R. Conf. Rep. No. 106-939, at 101

Clearly, 18 U.S.C. § 1589 was never intended by Congress to criminalize an employer's refusal to give an already well-compensated employee an additional raise. Nor was 18 U.S.C. § 1589 intended to criminalize an employer's decision or its "threat" to stop sponsoring a permanent labor certification.[1] As a matter of law, these are simply not the type of "serious harm" or "threats of serious harm" that the Trafficking Victims Protection Act of 2000 was designed to prevent. Again, in this case, Plaintiff is claiming "coercion" because he was not paid as much as he now believes that his services were worth (after assignation of certain additional duties), although he admits that he received an annual salary of $95,000. Plaintiff has not, and cannot, claim that he was meaningfully prevented from (a) refusing to undertake the additional duties, or (b) leaving CAU's employment, if he was dissatisfied with the terms of his employment.

---

[1] CAU denies that it ever stated that it would cease sponsoring Plaintiff's permanent labor certification if he continued to request a raise, but, to the extent that Plaintiff is making this allegation, it is treated as true solely for purposes of this Motion to Dismiss.

5

Indeed, Plaintiff's Complaint acknowledges that he had a valid H1-B visa, entitling him to work in the United States until December 2009, and the Complaint states that using that visa, Plaintiff moved from his initial employment with CAU to a job with Florida International University in 2006, and back to CAU again. Plaintiff's Complaint, ¶ 8, 9. If Plaintiff did not like the terms of the employment at CAU, including the salary he was paid for the duties he was assigned, he had the option of seeking employment elsewhere. The employment contract attached to the Complaint as Exhibits 1 and 5 gives Plaintiff the right to terminate employment at CAU upon thirty (30) days notice. *See* Plaintiff's Complaint, Exhibit 1, ¶ 12; Exhibit 5, ¶ 12.

A review of the case law interpreting 18 U.S.C. § 1589 demonstrates that the harm and/or threats that the statute was designed to protect against are indeed serious, and that cases in which the employee has the option of simply leaving employment are not covered under 18 U.S.C. § 1589. *United States v. Calimlim*, 538 F.3d 706 (7th Cir. 2008), involved one of the domestic servitude cases that the legislative history indicated the statute was designed to combat. In that case, a Philippine family induced a 19 year old woman, who had worked for the family in the Philippines, to travel to the United States, where they confiscated her passport, told her she was in the country illegally, and obligated her to work 16 hour work days as a live-in housekeeper. The domestic employee was severely restricted in her ability to leave the house and answer the front door or telephone. In finding that the defendants violated 18 U.S.C. § 1589, the Court made it a point to contrast the case with one where the employee could simply leave. It explained:

> The Calimlims imagine many hypothetical innocent parties who might get swept up by the law. For example, they pose the case of a small employer who tells her employees that they must start paying a portion of their health insurance premiums or face the loss of their health insurance benefits (surely a common situation in these times). This example does not advance their case for overbreadth, however, because this employer would not run afoul of the statute.

6

> This plan could not be a "scheme . . . intended to cause the [employee] to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm . . . ," 18 U.S.C. § 1589(2), because the employee could quit and change jobs. The employer is not procuring labor by means of this statement, only lower wages or a renegotiation of the employment contract. There is no reliance on fear consistent with an intended scheme.

*Calimlim*, 538 F.3d at 712.

Other cases discussing 18 U.S.C. § 1589 involve severe harm or threats of severe harm equal to or greater than that described in *Calimlim, supra*.  In *United States v. Bradley*, 390 F.3d 145 (1st Cir. 2004), *vacated, remanded on other grounds*, 545 U.S. 1101 (2005), the defendants travelled to Jamaica and recruited two men as seasonal employees for a tree removal company.  When the men arrived in the United States, the defendants housed them in a trailer with no running water, electricity, or heat, paid them less than half of what was promised, and eventually took their passports and return tickets.  At work, the defendants would yell, curse, and intimidate the men, and threaten to "kick their ass" and to take their gun and look for them.  In *United States v. Marcus*, 487 F. Supp. 2d 289 (E.D. NY 2007), *reversed and remanded on other grounds,* 2010 U.S. Lexis 4163 (U.S. May 24, 2010), after the victim indicated a desire to leave, the defendant prolonged what started as a consensual sado-masochistic sexual relationship by threatening the victim, carrying out even more savage violence and acts of forced sex, and threatening to kill the victim's godson.  In *United States v. Sabhani*, 539 F. Supp. 2d 617 (E.D. NY 2008), the defendants employed domestic servants from Indonesia.  The defendants took the servants' passports, obligated them to work 20 hour days, seven days a week, forced them to sleep on the floor, prohibited contact with outsiders, and physically abused them.  The defendants also threatened to hurt the servants and their children if they tried to run away.

In this case, by contrast, if one accepts all of Plaintiff's allegations as true, then all that CAU did was to deny Plaintiff a raise beyond $95,000 per year, despite assigning him certain

additional duties, and advise Plaintiff that it would either not renew the Plaintiff's contract after expiration or refrain from sponsoring his permanent labor certification if he did not perform the additional duties. Even as alleged, these actions are a far cry from the type of severe worker exploitation that the statute was designed to address and that is discussed in all other cases under 18 U.S.C. 1589. Because, as a matter of law, CAU's alleged actions do not rise to the level of serious harm or threats of serious harm, CAU is entitled to an order dismissing Count 2 of Plaintiff's Complaint.

### B.    20 CFR 656.12 Offers Plaintiff No Protection

No doubt cognizant of the fact that refusal to pay a raise is hardly coercion or force under 18 U.S.C. § 1589, Plaintiff attempts to obfuscate the issues by arguing that CAU violated 20 CFR 656.12, a regulation relating to applications for permanent labor certification, by obtaining his labor for free. Even accepting all of Plaintiff's allegations as true, Plaintiff's attempt to tie the regulation governing permanent labor certification applications to the statute criminalizing forced labor must fail.

20 CFR 656.12 states, in its entirety:

The following provision applies to applications filed under both this part and 20 CFR part 656 in effect prior to March 28, 2005, and to any certification resulting from those applications:

(a) Applications for permanent labor certification and approved labor certifications are not articles of commerce. They shall not be offered for sale, barter or purchase by individuals or entities. Any evidence that an application for permanent labor certification or an approved labor certification has been sold, bartered, or purchased shall be grounds for investigation under this part and may be grounds for denial under § 656.24, revocation under § 656.32, debarment under § 656.31(f), or any combination thereof.

(b) An employer must not seek or receive payment of any kind for any activity related to obtaining permanent labor certification, including payment of the employer's attorneys' fees, whether as an incentive or inducement to filing, or as a reimbursement for costs incurred in preparing or filing a permanent labor

8

certification application, except when work to be performed by the alien in connection with the job opportunity would benefit or accrue to the person or entity making the payment, based on that person's or entity's established business relationship with the employer. An alien may pay his or her own costs in connection with a labor certification, including attorneys' fees for representation of the alien, except that where the same attorney represents both the alien and the employer, such costs shall be borne by the employer. For purposes of this paragraph (b), payment includes, but is not limited to, monetary payments; wage concessions, including deductions from wages, salary, or benefits; kickbacks, bribes, or tributes; in kind payments; and free labor.

(c) Evidence that an employer has sought or received payment from any source in connection with an application for permanent labor certification or an approved labor certification, except for a third party to whose benefit work to be performed in connection with the job opportunity would accrue, based on that person's or entity's established business relationship with the employer, shall be grounds for investigation under this part or any appropriate Government agency's procedures, and may be grounds for denial under § 656.32, revocation under § 656.32, debarment under § 656.31(f), or any combination thereof.

First, the regulation is inapplicable because Plaintiff admits that he provided no free labor; he was paid $95,000 per year for his work. Second, the administrative history of the regulation makes clear that its purpose is not to protect the alien applicant, but the domestic work force, and so any alleged violation of 20 CFR § 1589 caused no harm to Plaintiff. Third, if, as Plaintiff alleges (and CAU denies), money that would have gone to his requested raise went, instead, to fund his permanent labor certification application, in violation of the regulation, then he was actually benefited or, at worst, suffered no harm because the transaction was a break even deal, from his point of view. Fourth, violation of 20 CFR § 656.12 does not rise to the level of serious harm necessary to support a claim under 18 U.S.C. § 1589 and 18 U.S.C. § 1595. Each point is addressed in more detail below.

### 1. Plaintiff was Amply Compensated for his Duties; He Provided No Free Labor

Plaintiff's attempt to claim that CAU violated 20 CFR § 1589 by not raising his salary is absurd on its face. The regulation prohibits an employer from seeking a direct or indirect

9

payment or reimbursement "for any activity related to obtaining permanent labor certification, including payment of the employer's attorneys' fees." Here, according to Plaintiffs' Complaint, CAU agreed to sponsor Plaintiff's permanent labor certification in April 2008. Plaintiff's Complaint, ¶ 12. According to Plaintiff's Complaint, it was only later, on July 11, 2008, when CAU's Director of Recruitment and Admissions resigned, that Plaintiff was assigned additional duties relating to recruitment and admissions. Plaintiff's Complaint, ¶ 13. Plaintiff does not (and cannot) allege that but for CAU's sponsorship of his permanent labor certification he would have received a raise.

Even if Plaintiff tried to allege causation, there could be no violation of 20 CFR § 1589. The regulation defines prohibited payments to include free labor and wage deductions in exchange for the employer pursuing a permanent labor certification on behalf of an employee. Here, Plaintiff provided no free labor. He was paid $95,000 per year, throughout the entire period that CAU pursued his permanent labor certification. Plaintiff's Complaint, ¶ 11, 12, and 18. Moreover, Plaintiff does not (and cannot) claim that there was any deduction to this $95,000 salary. Nothing in the regulation prohibits an employer from rearranging an employee's job duties, as Plaintiff alleges that CAU did here. An employer is entitled to expect an employee to render services in exchange for the wages that he receives, and this does not change just because the employer is pursuing an permanent labor certification on behalf of the employee.

### 2. The Purpose of 20 CFR § 1589 is Not to Protect the Alien Applicant, but the Domestic Work Force

It is important to note that 20 CFR 656.12 has no private right of action. This is because the evil that the regulation was designed to combat is not the exploitation of foreign workers, but fraud in the immigrant visa system which damages the United States and the domestic labor market. In its notice of proposed rulemaking, in connection with promulgation of amendments,

10

including 20 CFR 656.12, to current regulations, the Department of Labor noted that the amendments were designed to "protect the integrity of the permanent labor certification program, deter fraud, and comply with the Department's statutory obligation to protect the wages and working conditions of U.S. workers." 71 Fed. Reg. 7656, 7658 (2006).

The notice of proposed rulemaking explained:

> The Department is proposing in 20 CFR 656.12 to prohibit improper commerce and several types of payments related to permanent labor certification applications and certifications. As noted above, permanent labor certifications have become commodities that too often are bought and sold by aliens seeking "green cards." A "black market" has been created in which employers or agents agree to broker applications for permanent labor certifications on behalf of aliens in exchange for payment of some kind. Such payments are not compatible with the purposes of the permanent labor certification program and may indicate lack of a bona fide position truly open to U.S. workers. Further, these payments may indicate the wage stated on the application is not the true amount the employer will pay the alien. As with the substitution practice, the Department has concluded that allowing sales of a government benefit to continue is simply bad government, and therefore proposes in § 656.12(a) to create an explicit and complete ban on the sale, barter, and purchase of labor certification applications and certifications.
>
> * * * *
>
> In some instances, an alien's payment of these costs may indicate there is not a bona fide position and wage available to U.S. workers. Further, alien subsidization of employer costs adversely affects the likelihood that a U.S. worker would be offered the job when, for example, the alien is paying for the recruitment effort.

71 Fed. Reg. 7656, 7660 (2006).

The final rule issued by the Department of Labor makes it even clearer that the focus of the regulation is the protection of the domestic workforce. It states, in relevant part:

> An alien's reimbursement or payment to an employer for filing a labor certification on his behalf turns labor certifications into commodities, increases the likelihood that a prejudicial arrangement exists which precludes any consideration of U.S. workers, and undermines the integrity of the labor market test required for certification under Section 212(a)(5)(A) of the INA. An alien employee who reimburses his employer via deductions from his paycheck or a lump payment is effectively being paid a lower wage than agreed to by the employer on the labor certification. A U.S. worker is non-competitive with the

11

alien worker unless he too accepts the actual lower wage. Therefore, the practice of aliens reimbursing employers for expenses the employer incurred in the labor certification process adversely affects the compensation of U.S. workers. Because the INA mandates that the Department may only approve a labor certification if there are not qualified U.S. workers for the position, and if the wages and working conditions of similarly employed U.S. workers are not adversely affected, the Department will not permit the practice of reimbursement of attorneys or other fees or costs associated with obtaining a labor certification. There is a direct correlation between an alien's financial participation in the labor certification process and the likelihood that an arrangement exists which precludes legitimate consideration of U.S. workers, affecting the integrity of the labor market test required by INA section 212(a)(5)(A). The statute charges the Department to ensure an adequate, good faith test of the labor market--that an alien will not be admitted for a job for which a qualified U.S. worker is available. It is, therefore, the Department's role and statutory responsibility to remove the potential for this undue influence.

*  *  *  *

The rule prohibits employers from receiving financial incentives or reimbursement for filing labor certification applications and from withholding payments from workers for that purpose (among other things). These are activities that undermine the legitimacy of the labor market test that is required to be conducted by the law before the Department may approve a labor certification. The Department's focus is not on attorneys' fees, but rather on the actual wage paid to the alien employee and the effect that a lower wage or reimbursement of costs has on the wages and opportunities available to U.S. workers. The transfer of the responsibility for payment of attorneys' fees or other costs associated with preparing, filing and obtaining labor certification from employer to alien (or others) signals preselection in the hiring decision, contrary to the requirement of an open recruitment process with full consideration of U.S. workers. The INA broadly empowers the Secretary to ensure that there is a bona fide job opportunity open to U.S. workers and that there is no adverse effect on the wages and working conditions of U.S. workers before approving a labor certification. As part of its statutory charge, the Department is responsible for eliminating factors which undermine the legitimacy of the job opening and of the recruitment process, including the improper allocation of costs and fees associated with labor certification. Prohibiting the alien, directly or indirectly, from paying the employer's attorneys' fees and other costs is a critical step toward ensuring employers or others do not degrade the validity of the labor market test.

72 Fed. Reg. 27904, 27921 (May 17, 2007).

The penalty for a violation of 20 CFR 656.16 is denial of the application and/or debarment of the offending employer from the labor certification process for a period of time.

Because 20 CFR 656.12 was never intended to protect the interests of the alien applicants and, indeed, provides no private right of action, Plaintiff cannot bootstrap any alleged violation of the regulation to his forced labor claim. Simply put, a violation of 20 CFR 656.16 cannot be a "serious harm or threat of serious harm" to the alien employee under 18 U.S.C. 1589.

### 3. If CAU Used Money that Would Have Gone to Plaintiff's Raise to Fund His Permanent Labor Certification Application, Plaintiff was Not Harmed

At the outset, CAU states that it often assigns its employees additional duties without an increase in compensation, and that this is contemplated by Plaintiff's employment agreements. Moreover, CAU denies that it took money that would have otherwise gone to Plaintiff in the form of a raise, and used it to fund the permanent labor certification application or to pay attorney fees. Nevertheless, even if the Court accepts as true all of Plaintiff's allegations for purposes of this Motion to Dismiss, as it must, then CAU is entitled to an order dismissing Count 2 because CAU's alleged violation of 20 CFR 656.16, far from harming Plaintiff, actually benefited him.

If, as Plaintiff claims, CAU funded the permanent labor certification benefiting Plaintiff with money it would have paid Plaintiff, instead of refusing to continue to process the application (as CAU was entitled to do), then Plaintiff benefited. If CAU used the money to pay for the application and its attendant attorney fees instead of providing the money to Plaintiff, then, at worst, Plaintiff broke even. Plaintiff may allege that CAU violated 20 CFR 656.16 (which CAU denies), but Plaintiff cannot seriously allege that the violation caused him any harm.

13

### 4. Violation of 20 CFR 656.16 Does Not Constitute Serious Harm Necessary to Support a Claim under 18 U.S.C. § 1589 and 18 U.S.C. § 1595

If Plaintiff could show that CAU would have paid Plaintiff an increased amount of compensation above $95,000, but that it chose not to because it used that money to fund the permanent labor certification, and if Plaintiff could show that this somehow violated 20 CFR 1589, and if Plaintiff could show that he somehow has a private right of action and was harmed by CAU alleged violation of 20 CFR 1589, then Plaintiff's argument will simply have come full circle. He will simply be arguing that CAU violated the forced labor statute because it did not give him as big a raise as he thought he deserved (although he was already making $95,000 per year). For all of the reasons stated above, in Section A, discussing 18 U.S.C. 1589 and 18 U.S.C. 1595, a claim that an employer refused to give an employee a raise is simply not the type of serious harm contemplated by 18 U.S.C. 1589 and 18 U.S.C. 1595. The parties freely contracted regarding the terms of Plaintiff's employment, and if Plaintiff was unhappy with the terms of his employment or he thought that CAU was breaching his employment contract, he was completely free to leave CAU's employment. CAU did not physically abuse Plaintiff, withhold his travel documentation, or engage in any of the actions described in the case discussing violations of the forced labor statute, and there are no allegations that CAU did so.

### C. Conclusion

For all of the foregoing reasons, the Court must dismiss Count 2 (Violation of 18 U.S.C. § 1589) of Plaintiff's Complaint, under Rule 12(b)(6), Fed. R. Civ. P., 12, for failure to state a claim against CAU upon which relief can be granted.

Respectfully submitted this 30th day of June, 2010.

                                                     *s/ Jose I. Leon*
Michael W. Casey, III
Florida Bar No. 141430
mcasey@ebglaw.com
Jose I. Leon
Florida Bar No. 958212
jleon@ebglaw.com
EPSTEIN BECKER AND GREEN, P.C.
200 South Biscayne Blvd., Suite 4300
Miami, Florida 33131-2305
Tel: 305-579-3200 Fax: 305-579-3201
***Attorneys for Defendant***

FIRM:7629008v1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

GERARDO ALVARADO,
    Plaintiff,                                                            Case No. 10-22072-CIV-Huck/O'Sullivan

vs.

UNIVERSIDAD CARLOS ALBIZU
(CARLOS ALBIZU UNIVERSITY), INC.,
a Puerto Rico corporation,

    Defendant.
_____/

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 30th day of June, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro-se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                                     *s/ Jose I. Leon*
                                                                         José I. León

17

## SERVICE LIST

Paul F. Penichet, P.A.
19 West Flagler Street, Suite 907
Miami, Florida 33130
Tel: 305-373-8809
Fax: 305-373-8810
*Attorneys for Plaintiff*

17

FIRM:7629008v1