## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 10-22072-CIV-HUCK/O'SULLIVAN

GERARDO ALVARADO,

      Plaintiff,

v.

UNIVERSIDAD CARLOS ALBIZU
(CARLOS ALBIZU UNIVERSITY), INC.,

      Defendant.

_____/

### ORDER

    This matter is before the Court on Defendant Carlos Albizu University's Motion to Dismiss Count Two of Plaintiff Gerardo Alvarado's Complaint (D.E. #6), filed June 30, 2010.  For the following reasons, the University's Motion is granted.

### FACTS

    Gerardo Alvarado, a former employee of Carlos Albizu University, is suing the University for breach of contract, violation of 18 U.S.C. § 1589, and breach of the duty of good faith and fair dealing.  Defendant has moved to dismiss Count Two of the Complaint, which alleges that the University violated 18 U.S.C. § 1589, a law targeting forced labor associated with human trafficking.

    In December 2006, Alvarado entered into a three-year contract to be Associate Director/Assistant Professor for the Business Administration Program of the University.  In this position, his annual salary was $75,000.  At that time, he was working in the United States on an H1-B visa.  In October 2007, the University promoted Alvarado to Interim Director of the Business Program at the Miami Campus.  As part of this appointment, the University raised Alvarado's salary to $95,000 per year.  In 2008, Alvarado notified the University that, because of his immigration status, it had to seek permanent labor certification in order for him to continue his employment beyond December 2009.  The University agreed to sponsor Alvarado's labor certification, which entailed retaining immigration counsel and publicly posting the position.  In July 2008, after the

1

Director of Recruitment and Admissions resigned, the University assigned Alvarado to take over the responsibilities of that position.   Alvarado requested additional pay for assuming these responsibilities.  The University informed Alvarado that it would not pay him for the additional duties he assumed because it already was paying for attorney's fees and other costs related to his permanent labor certification.  The typical salary for a Director of Recruitment and Admissions is $80,000 per year.   The University warned Alvarado that it would stop sponsoring his labor certification and would not re-new his contract if he continued to pursue additional compensation for his responsibilities as Director of Recruitment and Admissions.  Alvarado's employment contract with the University gave him the right to terminate his employment upon 30-days notice.  If Alvarado exercised this provision, he would be obligated to pay the University ten percent of his annual salary to cover the expense of finding his replacement.

## ANALYSIS

Alvarado alleges that the University violated provisions of 18 U.S.C. § 1589, which criminalizes forced labor.  Specifically, Alvarado's response to the Motion to Dismiss clarifies that he alleges the University violated § 1589(a)(3) and (4).  (*See* Pl. Resp. at 2.)  Section 1589(a)(3) prohibits an employer from obtaining labor "by means of the abuse or threatened abuse of law or legal process."  Section 1589(c)(1) defines "abuse or threatened abuse of law or legal process" as "the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action."  Section 1589(a)(4) prohibits employers from knowingly obtaining labor "by means of any scheme [or] plan . . . intended to cause the person to believe that, if the person did not perform such labor . . . that person or another person would suffer serious harm or physical restraint."  Section 1589(c)(2) defines "serious harm" as "any harm, whether physical or non-physical, including psychological, financial, or reputational harm that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor . . . in order to avoid incurring that harm."

Section 1589 was enacted as part of the Trafficking Victims Protection Act of 2000, Pub. L. No. 106-386, 114 Stat. 1464 (2000).  The stated purpose of the Act is to "combat trafficking in

persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." 22 U.S.C. § 7101(a). The findings of the Act further explain that the Act was enacted to combat trafficking across international borders and into the United States. 22 U.S.C. § 7101(b)(1). The extensive findings detail how traffickers frequently target women and children who are "disproportionately affected by poverty, the lack of access to education, chronic unemployment, discrimination, and the lack of economic opportunities in countries of origin." 22 U.S.C. § 7101(b)(4); *see generally* 22 U.S.C. § 7101(b). Force, threats of violence, fraud, and coercion are hallmarks of modern trafficking. *See generally* 22 U.S.C. § 7101(b). In 18 U.S.C. § 1595, Congress created a private, civil right of action for those subjected to forced labor (as defined by § 1589) against those who conducted or knowingly benefitted from the forced labor.

A.      **Section 1589(a)(3): "Abuse or Threatened Abuse of Law or Legal Process"**

Alvarado alleges that the University violated § 1589(a)(3) because it "abused or threatened abuse of law or legal process" by transgressing 20 C.F.R. § 656.12, a regulation governing applications for permanent labor certification. For the reasons discussed below, Alvarado fails to state a claim under § 1589(a)(3).

Section 656.12 specifies that "[a]pplications for permanent labor certification . . . are not articles of commerce." 20 C.F.R. § 656.12(a) Therefore, they "shall not be offered for sale, barter or purchase by individuals or entities." *Id.* Evidence that a permanent labor certification application has been "sold, bartered, or purchased shall be grounds for investigation . . . and may be grounds for denial . . ., revocation . . ., debarment . . ., or any combination thereof." *Id.* The regulation also specifies that "[a]n employer must not seek or receive payment of any kind for any activity related to obtaining permanent labor certification, including payment of the employer's attorneys fees." 20 C.F.R. § 656.12(b). Payment includes wage concessions, including deductions from wages, salary, or benefits, and free labor. *Id.* Furthermore, "[e]vidence that an employer has sought or received payment from any source in connection with an application for permanent labor certification" also is grounds for denial, revocation, and/or debarment. 20 C.F.R. § 656.12(c). Section 656.12 confers no private right of action.

Alvarado alleges that the University runs afoul of 18 U.S.C. § 1589(a)(3) because it

demanded "free labor" from Alvarado, in violation of 20 C.F.R. § 656.12.  (Compl. at ¶¶ 24-28.)
According to Alvarado, the University received "free labor" from him when it assigned to him the
Director of Recruitment and Admissions responsibilities, and subsequently refused to additionally
compensate him because the University already was paying for attorney fees and the costs of
permanent labor certification.  Therefore, Alvarado claims that the University obtained his labor "by
means of the abuse or threatened abuse of law or legal process."  *See* 18 U.S.C. § 1589(a)(3).

Even assuming that the University violated 20 C.F.R. § 656.12,[1] Alvarado's argument fails.
The definition of "abuse or threatened abuse of law or legal process" in § 1589 is inconsistent with
Alvarado's argument because the definition envisions *misuse* or threatened *misuse* of law or the legal
process, not mere violation of a regulation.  Alvarado contends that the University "abused or
threatened to abuse the labor certification regulation and process" because it violated 20 C.F.R.
§ 656.12 by requiring him to perform the Director of Recruitment and Admissions position for
"free."  (Pl. Resp. to Mot. at 3.)  In doing so, Alvarado attempts to convert the violation of a
regulation into "abuse" of the regulation or legal process, although the plain language of § 1589
suggests that his interpretation is incorrect.  The plain language states that a law or legal process is
abused if it is used or threatened to be used for a purpose for which it was not designed or to exert
pressure on another person.  *See* § 1589(c)(1).

Regardless of whether the University violated 20 C.F.R. § 656.12, the University did not
wield the regulation as a tool of coercion.  Alvarado does not point to any case supporting his
interpretation of "abused or threatened to abuse" — that mere violation of a regulation suffices.  In
contrast, the University points to several cases from other jurisdictions interpreting § 1589(a)(3) as
requiring that a defendant be accused of *misusing* or threatening to *misuse* legal process for a
coercive purpose.  *See United States v. Garcia*, 02-CR-110S-01, 2003 U.S. Dist. LEXIS 22088, at
*22-24 (W.D.N.Y. Dec. 2, 2003) (discussing the definition of "by means of abuse or threatened
abuse of the law or legal process," and noting that "abuse of process" occurs when a person "uses
a legal process . . . against another primarily to accomplish a purpose for which it is not designed");
*see also Catalan v. Vermillion Ranch Limited Partnership*, Civil Action No. 06-cv-01043-WYD-

---

[1]     The Court declines to address the issue of whether the University violated 20
C.F.R. § 656.12 because Alvarado's claim fails on other grounds.

MJW, 2007 U.S. Dist. LEXIS 567, at *23-24 (D. Colo. Jan. 4, 2007) (finding that a threat by defendant of deportation was sufficient to support a claim under § 1589(a)(3) for which relief could be granted).  The University correctly points out that Alvarado attempts to criminalize the mere violation of a regulation (20 C.F.R. § 656.12), when the regulation itself provides an exclusive list of government remedies — denial, revocation, or debarment — and contains no private right of action.  Taking the logic of Alvarado's argument a step further, virtually all immigration regulation violations that adversely affect employees could be characterized as "abuse or threatened abuse" of the law or legal process by the employer under § 1589(a)(3).  Such a result is at odds with the stated purposes of the Act, which is limited to preventing human trafficking.[2]

**B.     Section 1589(a)(4):  "Serious Harm"**

Alvarado also alleges that the University violated § 1589(a)(4) by refusing to raise his salary of $95,000 per year when he took on the additional responsibilities of the Director of Recruitment and Admissions position.  For the reasons discussed below, Alvarado fails to state a claim under § 1589(a)(4).

Alvarado contends that he suffered serious financial harm within the definition of § 1589(a)(4) because the University threatened to terminate his employment or not renew his contract if he persisted in asking for a pay raise for his assignment to the responsibilities of Director of Recruitment and Admissions.  As discussed above, the stated purpose of the Trafficking Victims Protection Act of 2000 is to prevent the modern slave trade in persons, particularly women and children.[3]  Typical § 1589 cases involve use of force, threats of violence, fraud, and coercion that prevent the employee/traffickee from having viable exit options.  *See United States v. Calimlim*, 538 F.3d 706, 708-709, 712 (7th Cir. 2008) (noting that defendants were not innocent employers because

---

[2]     Consistent with the policy that parties should be permitted to amend the pleadings, the Court gives Alvarado leave to amend his Complaint; however, Plaintiff's counsel is advised of his obligations under Rule 11, and should file an amended Complaint only if it is consistent with Rule 11's requirements.

[3]     The legislative history indicates that Congress enacted the Act in order to "provide federal prosecutors with the tools to combat severe forms of worker exploitation that do not rise to the level of involuntary servitude . . . ."  H.R. Conf. Rep. No. 106-939, at 101, as reprinted at 2000 WL 1479163, at *91.

they relied on fear, including threats regarding immigration status, to control the plaintiff); *see, e.g.*, *United States v. Sabhnani*, 599 F.3d 215, 224-32 (2d Cir. 2010) (describing the severe physical and psychological abuse by the defendants against the plaintiffs, as detailed in the trial court).

Alvarado was not trafficked to the United States, he earned a healthy salary, and enjoyed the same freedoms and rights of employment as any other alien resident. During the events in question, Alvarado was earning a salary of $95,000. Alvarado's contract also specified that he could leave his position upon 30-days notice. If the University had terminated his employment, as Alvarado claims it threatened, he was free to seek employment with another employer or to leave the United States. If he is wrongfully terminated, Alvarado has adequate remedies, as evidenced by Counts 1, 3, and 4 of his Complaint. Alvarado points to no case where a similarly-situated plaintiff successfully has claimed a violation of § 1589(a)(4) or has proved financial harm that rises to the level of the "serious harm" that the Act envisions. In fact, Alvarado is similarly situated to every other United States worker who has been asked to take over responsibilities not explicitly mentioned in his job description. His allegations against the University are not activities prohibited by § 1589(a)(4).

### CONCLUSION

For the foregoing reasons, Alvarado fails to state a claim upon which relief can be granted under § 1589(a)(3) or (4). Therefore, the University's Motion is GRANTED. Alvarado is granted leave until September 6, 2010 to amend Count Two if he is able to do so consistent with the constraints of Rule 11.

DONE AND ORDERED in Chambers, Miami, Florida, on August 25, 2010.

_____
Paul C. Huck
United States District Judge

**Copies furnished to:**
All Counsel of Record

6